IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


THADDAUS MUNFORD,                )
                                 )
     Plaintiff,                  )
                                 )
     v.                          )     1:04CV17
                                 )
LARRY HARRELSON, Deputy          )
Sheriff, individually and in     )
his official capacity,           )
DALE B. FURR, in his official    )
capacity,                        )
FIDELITY AND DEPOSIT COMPANY     )
OF MARYLAND, Surety,             )
                                 )
     Defendants.                 )


MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

     Plaintiff Thaddaus Munford brings this action under 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") against three defendants: (1) Larry Harrelson, a deputy sheriff in Richmond County, North Carolina, in both his individual and official capacities; (2) Sheriff Dale B. Furr of Richmond County, in his official capacity; and (3) Fidelity and Deposit Company of Maryland ("Fidelity"), as surety on a sheriff's bond. Plaintiff alleges he was unlawfully arrested by Harrelson, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and seeks to recover compensatory damages, costs, attorney's fees, and other appropriate relief. For the reasons

set forth below, the motion to dismiss will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). The complaint sets out the following factual allegations.

On April 25, 2002, Plaintiff went to the Richmond County Courthouse to pay property taxes on his vehicle. To enter the courthouse, he passed through a security checkpoint that required he walk through a metal detector. Plaintiff triggered the alarm on his way in, so Deputy Sheriff Arthur Steele searched him with a hand-held metal detector. Deputy Sheriff Steele concluded that the alarm was triggered by Plaintiff's suspenders and allowed him to continue into the courthouse.

Later, Plaintiff left the courthouse with Tax Administrator E. L. Green, apparently so Green could view Plaintiff's vehicle. As Green and Plaintiff re-entered the courthouse, Plaintiff once again triggered the alarm on the metal detector. Plaintiff stopped and waited to be searched with a hand-held device. Defendant Harrelson stated to Plaintiff, "[W]hy are you looking at me? Did you hear the metal detector go off? Come on out of there and to [sic] through the metal detector again." (Compl. ¶

2

12.) Plaintiff again passed through the metal detector. Defendant Harrelson then stated, "[Y]ou look like you have an attitude." (Id. ¶ 14.) Plaintiff responded that he did not have an attitude. Defendant Harrelson told Plaintiff "that if he opened his mouth again he would put plaintiff out of the courthouse." (Id.) Defendant Harrelson also threatened Plaintiff with arrest for disorderly conduct if Plaintiff "opened his mouth again." (Id. ¶ 15.) Plaintiff responded that he had a right to be in the courthouse.

Defendant Harrelson put Plaintiff under arrest for disorderly conduct. After Harrelson had handcuffed Plaintiff's hands behind his back, he began taking him to a magistrate. They walked past Defendant Furr, who inquired about the situation. (Id. ¶¶ 15-17.) Harrelson told Furr that he was taking Plaintiff to a magistrate. Defendant Furr told Harrelson that an order by Superior Court Judge Michael Beale required Plaintiff be taken to a judge rather than a magistrate and instructed Harrelson to comply. Plaintiff was taken to the courtroom of District Court Judge Tanya Wallace.

Approximately three hours later, Judge Wallace issued an order finding that Plaintiff was in criminal contempt for refusing to give his name, refusing to leave the courthouse, and ordered Plaintiff to serve 48 hours in the Richmond County Jail. Plaintiff denies that he acted in a disorderly manner or

3

committed any criminal offenses, and he asserts that his arrest was without warrant and without probable cause. He also asserts he was never charged with disorderly conduct.

**II. ANALYSIS**

Plaintiff claims that his arrest was unlawful and in violation of his rights under the Fourth and Fourteenth Amendments. He brings a claim under 42 U.S.C. § 1983 to recover damages and other relief. He also brings a claim against Defendant Furr's sheriff's bond. Defendants move to dismiss the complaint on three grounds: (1) Defendants Harrelson and Furr cannot be sued in their official capacities because they are state officials protected by Eleventh Amendment immunity; (2) Defendant Harrelson cannot be sued in his individual capacity because he was following a state court order and is entitled to absolute immunity; and (3) Defendant Fidelity's liability is derivative of the liability of Harrelson and Furr, and the claim on the sheriff's bond must be dismissed once the claims against Harrelson and Furr are dismissed.

The doctrine of Eleventh Amendment immunity provides that a state and its public officials acting in their official capacities are immune from suit in federal courts. Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996). The doctrine does not protect local governments and their employees. Id. In North Carolina, a sheriff is a local official and is not protected from

suit by Eleventh Amendment immunity.  Id. at 343.  Further, a claim under § 1983 may be brought against a local government and its officials in their official capacities.  Monell v. Department of Soc. Servs. of N.Y., 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978).

An official capacity suit is, in substance, a suit against the entity of which the official is an agent.  Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985).  In this case, the official capacity claims against Defendants Harrelson and Furr should be treated as filed against the office of the Sheriff of Richmond County.  Because the official capacity claim against Harrelson is redundant with the official capacity claim against Furr, the former claim will be dismissed.  See e.g., Gantt v. Whitaker, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002), j. aff'd, 57 Fed. Appx. 141 (4th Cir. Jan. 23, 2003) (dismissing an official capacity suit against a deputy sheriff as redundant with the official capacity suit against the sheriff). The official capacity claim against Defendant Furr will not be dismissed on the ground of Eleventh Amendment immunity, but, as discussed below, will be dismissed on other grounds.

Defendants' second argument is that because Defendant Harrelson was following a judge's order when he is alleged to have violated Plaintiff's rights, he is entitled to absolute immunity when sued in his individual capacity.  Absolute immunity

5

is allowed only in very limited situations where the governmental function or status warrants protection from suit.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807, 102 S. Ct. 2727, 2732 (1982).  There is no immunity based solely on the office of the defendant.  Rather, the Supreme Court has used a "functional" approach, which looks to the specific act and whether it is the type of function that warrants the protection of absolute immunity.  <u>Id.</u> at 810-11, 102 S. Ct. at 2734.

For executive branch officials, "qualified immunity represents the norm."  <u>Id.</u> at 807, 102 S. Ct. at 2732.  Government officials performing discretionary functions are entitled to qualified immunity so long as their actions do not violate clearly established law.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038 (1987).  In other words, a police officer is generally protected from suit unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow</u>, 457 U.S. at 818, 102 S. Ct. at 2738.

It is appropriate in considering an immunity defense to also determine whether Plaintiff has been deprived of a constitutional right.  <u>See, e.g.</u>, <u>Jenkins v. Medford</u>, 119 F.3d 1156, 1160 (4th Cir. 1997) ("When reviewing a claim of qualified immunity, we consider whether the plaintiff has been deprived of a constitutional right.").  "If the complaint shows that the

6

plaintiff has not suffered such a deprivation, the defendant is entitled to dismissal of the claim under Rule 12(b)(6)." Id.

According to the complaint, Plaintiff complains of two acts committed by Harrelson: (1) Harrelson arrested Plaintiff, and (2) he took Plaintiff to a district court judge rather than a magistrate.[1] With regard to the arrest, it is not necessary in this case to decide whether Harrelson may have been entitled to absolute immunity had he been following a judge's order. Harrelson was not following any judge's order when he arrested Plaintiff and so could not be entitled to absolute immunity under Defendants' argument. According to the facts alleged, Harrelson had already handcuffed Plaintiff and was taking him to a magistrate when he learned of Judge Beale's order. He could not have been following any state court directive. However, Harrelson may still be entitled to qualified immunity. Plaintiff has alleged that the arrest was made without probable cause. (Compl. ¶ 15.) It is clearly established that an officer must have probable cause to arrest. St. John v. Hickey, ___ F.3d ___, ___ (6th Cir. 2005); see also Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 537 (stating that "[u]nder settled law," law

---

[1] The complaint also alleges that Plaintiff was subjected to 48 hours of confinement in the county jail. That action, however, was ordered by Judge Wallace and not by Defendant Harrelson. Plaintiff brings no claim against Judge Wallace, so it appears he is not seeking recovery for any injury suffered by the confinement.

7

enforcement officers would be "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest"). Thus, if Plaintiff can prove that Harrelson lacked probable cause in this situation, he can overcome the defense of qualified immunity. To the extent this claim is based on the arrest, the motion to dismiss will be denied.

Defendant Harrelson had knowledge of Judge Beale's order when he took Plaintiff before Judge Wallace. Again, the court need not reach the question of whether Harrelson would be entitled to absolute immunity when following a judge's order because, as a matter of law, this action does not constitute a deprivation of Plaintiff's constitutional rights. An officer who makes an arrest is required to expeditiously present the person before a judicial officer who then determines whether probable cause exists and the propriety of further detention. See Gerstein v. Pugh, 420 U.S. 103, 114, 95 S. Ct. 854, 863 (1975). This is exactly what Defendant Harrelson did, and his actions are in full compliance with the Fourth Amendment's requirements. Further, a district judge is a magistrate's superior. It was reasonable for both Harrelson and Furr to follow Judge Beale's order because it came from a judicial officer superior to the magistrate, and it required that an arrestee be taken to a judicial officer with more authority than a magistrate. See Clark v. Link, 855 F.2d 156, 165 (4th Cir. 1988) (finding it was

8

reasonable for a deputy to assume a magistrate would defer to the decision of a district judge). There can be no constitutional harm in taking an arrested individual before a district judge instead of a magistrate. Similarly, a minimal detention of a few hours surrounding an arrestee's initial appearance before a judicial officer is also not a deprivation of rights sufficient to support a § 1983 claim. See Clark, 855 F.2d at 166 ("The decision of the Magistrate, resulting in a detention of but three hours is insufficient to sustain a section 1983 claim. . . . Under those circumstances, the deputies were entitled to qualified immunity."). Therefore, Plaintiff's claim must be based solely on the arrest.

Because the claims in this case must be based solely on the arrest, the claim against Defendant Furr must be dismissed. Under the facts as alleged in the complaint, Defendant Furr was not involved in Plaintiff's arrest. There can be no § 1983 liability based solely on respondeat superior. Monell, 436 U.S. at 691, 98 S. Ct. at 2036. Rather, to hold a local government entity liable for its employee's action, a plaintiff must show that the action "alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690, 98 S. Ct. at 2035-36. Here, Plaintiff has not alleged that Defendant Harrelson was acting pursuant to any policy, law,

or custom of the Richmond County Sheriff's Department or of Sheriff Furr when he arrested Plaintiff. Therefore, Plaintiff has not alleged enough to hold the sheriff or his office liable in this action, and the official capacity claim against Defendant Furr fails under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Finally, Defendants argue that the liability of Fidelity is derivative of the liability of the other defendants. It is unclear whether Fidelity would be liable on the individual capacity claim against Harrelson, which will remain in the case. The court is without any basis to dismiss the claim against Fidelity.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss [7] is GRANTED in part and DENIED in part. The motion is granted as to the official capacity claims against Defendants Harrelson and Furr. The motion is denied as to the individual capacity claim against Harrelson and as to the claim against Fidelity.

This the 20th day of July 2005.

*[signature]*
United States District Judge